IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HECTOR CLAUDIO, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION NO. 15-5862 |
| | : | |
| v. | : | |
| | : | |
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR APPROVAL OF SETTLEMENT AND DISMISSAL OF CLAIMS WITH PREJUDICE**

**I.     INTRODUCTION**

Plaintiffs Hector Claudio, Johnnie Battle, John Urbach, Ashley Weight, Jermaine Facey, Daniel Contreras, Brandon Watson, Stacey Grant, Amber Rubin, Kimberly Howes, and Jason Watson, on behalf of themselves and a class of individuals eligible to participate in this settlement ("Plaintiffs"), and Defendant Southeastern Pennsylvania Transportation Authority ("SEPTA") (collectively, "the Parties"), have reached a settlement in this collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, subject to this Court's approval. The Parties respectfully submit this Joint Motion for Approval of Settlement and Dismissal of Claims with Prejudice. The fully executed Settlement Agreement and Release ("Settlement Agreement") is attached to the Joint Motion as Exhibit 1. As discussed below, the Settlement Agreement, which the Parties negotiated in a mediation session held on March 22, 2017, is a fair and reasonable compromise of Plaintiffs' claims and warrants judicial approval.

**A.     Background**

On October 28, 2015, plaintiff Hector Claudio and ten other individuals filed a complaint against SEPTA, individually and on behalf of other current and former bus and trolley

operators, alleging that SEPTA violated the FLSA by failing to compensate operators for time worked prior to their scheduled report times.  (Docket No. 1).  Specifically, Plaintiffs allege that federal law and SEPTA's standard operating procedures required operators to conduct pre-trip vehicle inspections that take at least 22 minutes to complete, yet SEPTA paid them for only 10 minutes.  According to Plaintiffs, this constitutes unpaid, off-the-clock work in violation of the FLSA.  Plaintiffs filed a collective action under Section 216(b) of the FLSA, seeking certification of a class of similarly situated operators.  On April 29, 2016, SEPTA filed its answer and affirmative defenses, denying liability.  (Docket No. 100).

On July 29, 2016, the Parties submitted a proposed stipulation and order to conditionally certify the matter as a collective action for the purpose of settlement only and to establish a procedure for providing notice of the collective action to potential class members.  This Court entered the Order on August 1, 2016, and stayed discovery to allow the conditional certification procedure to play out, and the Parties set out to notify operators who might qualify for the proposed class.  (Docket No. 105).  Shortly thereafter, the Parties agreed to a second stipulation, approved by this Court on September 8, 2016, which further defined the proposed class.  (Docket No. 106).  To participate in the settlement, operators were required to submit an opt-in form within 30 days of the mailing date of the notice.  Before the notice process, approximately 2,400 potential plaintiffs had opted in.  The notice process yielded over 300 more opt-ins, bringing the total number of opt-in plaintiffs to 2,789.

The Parties agreed, for purposes of notifying the potential class, that the relevant class of potential plaintiffs consisted of operators "employed for forty or more hours during any workweek from October 28, 2012 to November 9, 2015," but excluding "(1) former employees who participated in the settlement of *Bell, et al. v. SEPTA*, Civil Action No. 11-4047 (E.D. Pa.),

whose employment with SEPTA terminated for any reason before August 2015,[1] and (2) employees hired after November 9, 2015."[2]

The Parties engaged in settlement discussions throughout late 2016 and into January 2017. The Parties agreed to participate in a mediation session with a private mediator, which was held on March 22, 2017.[3] The Parties each had the opportunity to fully discuss their claims and defenses with the mediator and to submit documents to him to support their arguments. As a result of the mediation, the Parties reached agreement on the material terms of a settlement. Following the mediation, the Parties memorialized the terms reached in mediation in the Settlement Agreement. (Ex. A to Joint Motion).

## II. NATURE OF THE SETTLEMENT AGREEMENT

### A. Scope of the Settlement Class

The named Plaintiffs and all other individuals who have opted in to this case will receive notice from a Third Party Administrator retained by Plaintiffs (the "TPA"), discussed below in Section II.C, regarding their eligibility to participate in this settlement. The Parties

---

[1] The Parties agree that any operator who participated in the *Bell* settlement, received a settlement payment in that matter, and left employment with SEPTA before receiving his or her *Bell* settlement payment, has been fully compensated.

[2] The November 9, 2015 cut-off date is the date on which SEPTA implemented process improvements to ensure that operators perform all pre- and post-trip inspections within the timeframe set by the collective bargaining agreement and that all work time is recorded appropriately. The Parties have agreed for settlement purposes that no plaintiff has incurred alleged damages following November 9, 2015, and that no employee hired after that date has incurred alleged damages.

[3] The parties engaged Jerry Roscoe, Esquire, at JAMS, as the mediator. In addition to being an experienced mediator, Mr. Roscoe served as the mediator in prior litigation between the Parties involving identical claims, and so was already familiar with the issues underlying the Parties' claims and defenses.

have agreed that the scope of the settlement class will be defined as follows and subject to these exclusions:[4]

1. The TPA will notify any opt-in plaintiff who participated in the *Bell* settlement, but left SEPTA's employment on or before the date of the settlement payment in *Bell* on August 25, 2015, that he or she is not eligible to participate in this settlement. These individuals do not meet the definition of the class set forth in this Court's August 1, 2016 and September 8, 2016 Orders.

2. The TPA will notify any opt-in plaintiff who participated in the *Bell* settlement, but ceased to hold an eligible operator position as defined in this case on or before August 25, 2015, that he or she is not eligible to participate in this settlement. These individuals were fully compensated in the *Bell* settlement, and did not incur any alleged damages after August 25, 2015 because they did not work as a bus or trolley operator following their receipt of their *Bell* settlement payment.

3. All remaining opt-in plaintiffs will share in the remaining Settlement Proceeds based on their proportional share of the damages alleged, as reflected on the final damages spreadsheet developed by the Parties for settlement purposes; provided, however, that:

    (a) Any remaining opt-in plaintiff who opted into the *Bell* case, but then opted out of the *Bell* case, will receive a one-time, lump sum payment amount to be determined by the Steering Committee; and

    (b) No remaining opt-in plaintiff will receive an individual settlement payment that is less than Twenty-Five Dollars ($25).

---

[4] Prior to notice being sent to potential class members in this case, and following the Court's August 1, 2016 Order defining the proposed class (Docket No. 105), a number of individuals opted in to this case who did not meet the requirements for class membership as defined by the Order.

### B.      Financial Terms of Settlement

In exchange for the promises, agreements, and legal releases stated in the Settlement Agreement, SEPTA agrees to pay the sum of One Million, Eight Hundred Thousand Dollars ($1,800,000) ("Settlement Proceeds") to Plaintiffs and their attorney in full and complete settlement of Plaintiffs' claims for back wages, liquidated damages, prejudgment interest, attorneys' fees, costs, and all other allowable damages, if any.  SEPTA also agrees to reserve an additional Twenty Thousand Dollars ($20,000), which will be used only to pay any additional monies owed to a Plaintiff as a result of miscalculation of individual class member settlement payments, and which will revert to SEPTA, in whole or in part, upon completion of all individual payments.

### C.      Administration of Settlement Agreement

Plaintiffs have retained Heffler Claims Group to serve as the TPA to administer the settlement of this action.  The Parties have agreed upon the terms and conditions under which the TPA will be engaged.  Plaintiffs will be responsible for paying the TPA its fee out of the Settlement Proceeds.  SEPTA will transfer the Settlement Proceeds to the TPA within ten (10) days of Court approval of the Settlement Agreement.  The TPA shall deposit the Settlement Proceeds into an Escrow Account, pending the distributions described below.

The TPA shall pay the following sums out of the Escrow Account within five (5) days of the TPA's receipt of the Settlement Proceeds:

1. Plaintiffs' court-approved attorneys' fees, costs, and expenses;

2. Payments to the Steering Committee members for their service to the class ($5,000 per Steering Committee member); and

>       3.      The TPA's own fee of $40,000, half of which will be held in reserve and paid when the TPA distributes the settlement proceeds to the individual Plaintiffs.

After payment of the amounts set forth above, the TPA shall pay the balance of the Settlement Proceeds of $1,580,000 to the individual plaintiffs, based on the requirements and exclusions set forth above in Section II.A.

Plaintiffs' counsel shall provide to the TPA the name of each Plaintiff and the amount to be paid to him or her.  The Parties have agreed to cooperate reasonably with respect to the gathering of information to provide to the TPA.  The list of plaintiffs who are in this lawsuit as of the date of the Settlement Agreement is attached to the Settlement Agreement.  (*See* Settlement Agreement, Ex. 1, at Exhibit B).  In addition, the form of Notice to be sent to Plaintiffs explaining the material terms of the settlement and distributing to them their respective shares of the Settlement Proceeds is attached to the Settlement Agreement.  (*See* Settlement Agreement, Ex. 1, at Exhibit A).  The TPA will be responsible for mailing the Notice to all Plaintiffs, regardless of whether a Plaintiff will receive an individual settlement payment.  If a Plaintiff is to receive a distribution of their respective share of the Settlement Proceeds, the TPA will mail the Notice at the same time it distributes Plaintiffs' individual checks.  Any individual settlement payments that the TPA is unable to reasonably distribute and that remain with the TPA shall be escheatable to the state in which it is determined that the individual plaintiff(s) entitled to said sum was last known to reside.

In exchange for receiving these payments, Plaintiffs have agreed to release SEPTA from all claims under the Fair Labor Standards Act and related state wage laws.  The release covers claims only up to and including the date of this Court's approval of the Settlement Agreement.  Any claim arising after that date has not been waived or released.

### III. DISCUSSION

#### A. Applicable Legal Standard for Approval of Collective Action Settlement Under 29 U.S.C. § 216(b)

Employees have only two avenues for settling an FLSA claim: (1) a compromise supervised by the Department of Labor pursuant to section 216(c) of the FLSA, or (2) a district court-approved compromise pursuant to section 216(b). *Lovett v. Connect America.com*, No. 14-2596, 2015 U.S. Dist. LEXIS 121838, at *8 (E.D. Pa. Sept. 11, 2015); *Adams v. Bayview Asset Mgmt., LLC*, 11 F. Supp. 3d 474, 476 (E.D. Pa. 2014). When presented with a proposed settlement for back wages under section 216(b) of the FLSA, the district court may enter a stipulated judgment after analyzing the settlement for fairness. *Lyons v. Gerhard's Inc.*, No. 14-06693, 2015 U.S. Dist. LEXIS 92348, at *6 (E.D. Pa. 2015) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). In addition to fairness to the litigants, the court must consider the public interest in the FLSA rights. *Lovett*, 2015 U.S. Dist. LEXIS 121838, at *8.

Before the Court may approve the settlement, it must scrutinize the settlement to determine whether it is "a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Devlin v. Ferrandino & Son, Inc.*, No. 15-4976, 2016 U.S. Dist. LEXIS 170823, at *9 (E.D. Pa. Dec. 9, 2016) (quoting *McGee v. Ann's Choice, Inc.*, No. 12-2664, 2014 U.S. Dist. LEXIS 75840 (E.D. Pa. June 4, 2014)). A settlement agreement resolves a *bona fide* dispute if it constitutes "a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute" and does not waive "statutory rights brought about by an employer's overreaching." *Devlin*, 2016 U.S. Dist. LEXIS 170823, at *9 (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1354).

**B.     The Proposed Settlement Terms are Fair and Reasonable in Relation to the Strength of Plaintiffs' Claims and Risks and Expense of Further Litigation in this *Bona Fide* Dispute.**

Here, the Settlement Agreement is a fair and reasonable resolution of a *bona fide* dispute. After months of discussion, the Parties continue to disagree on a number of issues, including the fundamental issue of whether Plaintiffs' claims are viable and whether they suffered any damages under the FLSA, as SEPTA denies that it is liable under the FLSA. For example, SEPTA asserts that it is entitled to offset any alleged damages with amounts paid as premiums, such as in connection with the collective bargaining agreement that covers most of the opt-in plaintiffs. Plaintiffs dispute SEPTA's assertion. Thus, there can be no doubt that a *bona fide* dispute exists between the Parties as to Plaintiff's claims for unpaid wages. Despite these disagreements, the Parties have reached a compromise that reflects the positions of both Parties with respect to potential litigation costs and risks for each. *See Mabry v. Hildebrandt*, No. 14-5525, 2015 U.S. Dist. LEXIS 112137, at *5 (E.D. Pa. Aug. 24, 2015) (finding settlement agreement to be a fair and reasonable compromise of a *bona fide* dispute where defendants continued to deny liability and resolution of claims would be expensive and difficult for plaintiffs).

SEPTA has agreed to pay a large settlement amount—$1,800,000.00—in resolution of the claims of the settlement class. The amount of the Settlement Proceeds is a negotiated number that takes into account Plaintiffs' calculated potential damages, the risk to and expense of the parties, and the uncertainty of litigation. *See Leap v. Yoshida*, No. 14-3650, 2016 U.S. Dist. LEXIS 57819, at *26 (E.D. Pa. Apr. 29, 2016) (finding "settlement clearly reflects a compromise over issues that are actually in dispute" where parties remained in disagreement over FLSA liability and settlement agreement reflected risks for both parties of further litigation). If the Settlement Agreement is not accepted, it will likely result in several more years

of discovery, including the need for numerous depositions and additional motions practice to determine whether the proposed class should be certified, and litigation over the claims.

The Settlement Agreement also takes into account Plaintiffs potential alleged damages under the FLSA.  The FLSA provides for back pay and liquidated damages in certain cases, together with costs and attorneys' fees.  The settlement amount in this case is an approximation of the opt-in plaintiffs' alleged damages, derived from SEPTA's and Plaintiffs' records.  The Parties undertook an extensive analysis of the time and pay records for all of the opt-in plaintiffs, based on SEPTA's personnel and payroll records.  This analysis factored heavily into the Parties' settlement negotiations and reflects the potential back pay, plus additional payments such as attorneys' fees, litigation costs, and other allowable damages, if any, that each opt-in plaintiff is alleged to have suffered.  *See Lyons*, No. 14-06693, 2015 U.S. Dist. LEXIS 92348, at *13 (concluding terms of settlement were fair and reasonable compromise of a bona fide dispute after analyzing a number of factors, including potential damages, costs to parties of litigation, attorneys' fees, and complexity of the case).  This analysis underpins the fairness and reasonableness of the settlement, as it is reasonably based on payroll data and takes into account the alleged claims of each opt-in plaintiff.

Thus, the Settlement Agreement represents a compromise on the part of the Parties, in that they have agreed not to pursue this case to summary judgment and trial, and therefore, each party has foregone the possibility that it may gain substantially more than the Settlement Agreement provides, and also mitigated the possibility that it loses substantially more. In addition, given that the release covers claims only up to and including the date of this Court's approval of the Settlement Agreement, and given that SEPTA implemented payroll process improvements on the cut-off date for damages for the proposed class, Plaintiffs have not

waived any FLSA rights prospectively, and thus the public interest in the underlying policy of the FLSA is preserved.  *See Lovett*, No. 14-2596, 2015 U.S. Dist. LEXIS 121838, at *9 (finding plaintiffs were not compromising FLSA rights prospectively where allegedly illegal compensation practice modified prior to filing of lawsuit).

Further, the Parties have agreed to facilitate the terms of the Settlement Agreement via a TPA, which will ensure the interests of both Parties are reflected in a fair and orderly processing of payments and in the overall final outcome.  The complexity, expense, and likely duration of further litigation, the risk for Plaintiffs of not recovering full back pay and liquidated damages, the risk for SEPTA for liability for back pay and liquidated damages, and the Parties' extensive analysis of the potential damages all support the conclusion that the Settlement Agreement, reached as a result of extensive discussions between the Parties, facilitated by a mediator, is fair and reasonable.

The Parties therefore request that this Court approve the Settlement Agreement.

Respectfully submitted,

By: /s/Brian D. Pedrow
    Brian D. Pedrow
    Daniel V. Johns
    Kelly T. Kindig
    BALLARD SPAHR LLP
    1735 Market Street, 51st Floor
    Philadelphia, PA 19103
    (215) 665-8500
    *Attorneys for Defendant Southeastern Pennsylvania Transportation Authority*

Dated:  June 5, 2017

By: /s/Bruce Bodner
    Bruce Bodner
    500 N. Second Street
    Philadelphia, PA 19123
    (215) 972-4140 x260
    *Attorney for Plaintiffs*

Dated:  June 5, 2017